UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT K. DECKER, No. 51719-074,

    Petitioner,

v.

DANIEL SPROUL, Warden

    Respondent.

Case No. 23-cv-00199-JPG

### MEMORANDUM AND ORDER

This matter comes before the Court on Decker's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 (Doc. 1) in which he claims he was improperly denied due process in a disciplinary hearing that stripped him of Good Conduct Time credit (GCT). The Respondent opposes the petition (Doc. 18). The Court finds that Decker's § 2241 petition lacks merit. Accordingly, Decker's petition is **DENIED** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

I.    Background

Decker is serving an aggregated 140-month term of imprisonment, followed by a three-year term of supervision, on one count of conspiracy to distribute a mixture of a detectable amount of hydromorphone, hydrocodone, and oxycodone under 21 U.S.C. § 846, and one count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h).

While the loss of GCT occurred at Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), Decker is currently being held at the United States Penitentiary in Marion, Illinois ("USP Marion").

Inmates at FCI Terre Haute are allowed limited access to email through the Trust Fund Limited Inmate Computer System (TRULINCS). Use of this email system comes with several

warnings and limitations. Relevant to Decker's claims, misuse of the email system can result in disciplinary action and communication is limited to approved people on the inmate's physical mail contact list. Providing false or fictitious information will result in disciplinary proceedings.

Decker has several family members including, but not limited to, a wife, son, and granddaughter. On February 16, 2021, the warden at FCI Terre Haute removed Decker's wife from his approved contact list because Decker was found guilty of criminal mail abuse. As Decker directed his wife to commit illegal acts, Decker was prevented from using TRULINCS to contact his wife. Despite this prohibition, on November 14, 2021, Decker added two of his wife's email addresses under the contact information for his son and granddaughter.

Decker's actions caught the attention of an analyst who reviewed his requests and, realizing Decker's plan, denied them. An incident report was delivered to Decker on November 16, 2021, by the Unit Disciplinary Committee (UDC). Decker claimed that he was not circumventing the email address because he wasn't aware of his wife's address and that he was never informed that he could not write to his wife.

In response to Decker's answers, UDC referred the charges to the Disciplinary Hearing Officer (DHO) on November 19, 2021. Decker was given a "notice of hearing" and a copy of the "Inmate Rights at Discipline Hearing[s]" on that same day. Decker sought to call two witnesses: the warden—to testify Decker was blocked from contacting his wife—and the analyst—to testify as to her authorization to write an incident report. Decker also requested and was given a staff representative and one was appointed to him on February 1, 2022—one month before the DHO hearing—and met with Decker prior to the hearing.

On March 1, 2022, at the DHO hearing, Decker unequivocally admitted, on the record, that he committed the alleged misconduct: "I did it. Other inmates have done the same thing and

have not received incident reports." (Doc. 18). After his confession, neither the warden nor the analyst were called as witnesses because any testimony they may have given was deemed redundant and unnecessary. Decker lost 27 days of GCT, 90 days of commissary privilege, and 90 days of visitation privileges.

Decker filed his § 2241 petition on March 24, 2022. He claimed that the loss of GCT was unjustified and that he was denied due process because he was not allowed to call the warden or the analyst as witnesses, present evidence, have a staff representative, nor given exculpatory evidence. Additionally, he claims that the disciplinary hearings were unsupported by "some evidence," and that he was denied notice informing him that his wife was a prohibited contact.

## II.     Legal Standard

In disciplinary hearings, prisoners have procedural due process rights, but these are not the same rights a prisoner had at trial. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a right to:

> (1) [A]dvance written notice of the charges against them at least twenty-four hours before the hearing;
> (2) the opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals; and
> (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.
> [(4)] the opportunity to be heard before an impartial decision maker.
>
> *Henderson v. U.S. Parole Commission*, 13 F.3d 1073, 1077 (7th Cir. 1994) (internal citations omitted).

However, if a witness's testimony would be "irrelevant, redundant, or unnecessary" a prisoner may be denied the right to call that witnesses. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Additionally, inmates do not have a constitutional right to a staff representative unless the inmate is illiterate or the issues are sufficiently complex. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). While not constitutionally mandated, inmates are provided a staff representative at a

DHO hearing by BOP policy. See 28 C.F.R. § 541.8(d); P.S. 5270.09 CN-1, Chapter 5.

The findings of the discipline hearing officer must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). A court will overturn the decision "if no reasonable adjudicator could have found [petitioner] guilty of the offense on the basis of the evidence presented." *Henderson*, 13 F3d. at 1077.

When an inmate believes the BOP is computing their sentence incorrectly, they may challenge their confinement by filing a § 2241 petition. *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019) (noting inmate may challenge the computation of his sentence by a § 2241 petition after first seeking relief through the BOP's administrative procedures); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992); *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *United States v. Dawson*, 545 F. App'x 539, 541-42 (7th Cir. 2013). § 2241 petitions are the proper method for prisoners to challenge the loss of GCT as a result of a disciplinary hearing. *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983).

However, a petitioner must exhaust his administrative remedies before filing a § 2241 petition. This is a common-law exhaustion requirement, not a statutory one. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may require it before it entertains a § 2241 petition. *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief"); *United States v. Koller*, 956 F.2d 1408, 1417 (7th Cir. 1992) (same with respect to sentence computation).

### III.   Analysis

The Respondent concedes that Decker exhausted administrative remedies before filing. Accordingly, the Court will accept that Decker exhausted and proceed to examination of his

petition on the merits.

First, Decker claims he did not receive a staff representative and that he was tricked into waiving his staff representative. Decker was provided a staff representative when requested. There is nothing in the record supporting his claims that he was tricked into waiver. The Respondent's filings indicate that a staff representative was present on Decker's behalf at the hearing but that Decker made no specific requests to him. The staff representative was appointed to him one month in advance of the hearing and met with Decker prior to the hearing. Absent evidence to support his claims, the Court finds the claim that Decker was improperly denied representation in his disciplinary hearing to be meritless.

Second, Decker claims he was prevented from calling witnesses, presenting evidence, and refused exculpatory evidence. The purpose of the hearing is to determine the facts and a defendant's rights to procedural due process are meant to ensure that "findings of a . . . violation will be based on *verified facts* and that the exercise of discretion will be informed by an *accurate knowledge* of the [violator's] behavior" *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972) (emphasis added). The question before the DHO was whether Decker committed the alleged violation. In response to the allegations Decker candidly confessed: "I did it." There would be no reason to call the warden or the analyst—both hostile witnesses—for his defense when Decker openly confessed to the violation. The Court finds valid the determination that the warden and analyst's confession would have been redundant.

Third, Decker claims that the DHO's determination was not supported by "some evidence." On the contrary, not only was the finding supported by the digital records of Decker attempting to add prohibited emails to his contact list, again, Decker openly confessed. A valid confession, on the record, supported by the facts, is well beyond the minimum standard of

"some evidence."

Fourth, Decker claims that he should not be culpable for the violation because he was never informed that he was prevented from contacting his wife. The Court finds his argument unpersuasive for several reasons. For one, Decker was aware that his wife had been removed from his contact list because if he was not aware she was removed, he would not have tried to add her emails under different contacts. Additionally, Decker knew he was forbidden from contacting his wife because not only did TRULINCS state that inmates are limited to contacting those on their contact list, but Decker actively tried to circumvent this restriction. Furthermore, at the hearing, after his confession, Decker stated that other inmates had done the same. This implies that Decker was aware that other inmates had attempted to circumvent TRULINCS's restrictions. Decker's statements and actions strongly suggest that Decker was well-aware that he was not to contact his wife and, despite knowledge of this restriction, actively tried to circumvent it.

In short: Decker was provided advance written notice of the charges against him four months before the hearing. Decker had opportunity to call witnesses and present documentary evidence in his defense but, because of his confession, rendered their testimony redundant and irrelevant. Decker was provided a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action and responded to that written statement. Decker had the opportunity to be heard before an impartial decision maker. Lastly, the DHO's finding against Decker was supported by more than "some evidence" as explained above. Accordingly, Decker was given sufficient due process and the claims raised in his § 2241 petition

are meritless.

### IV.  Conclusion

For the foregoing reasons, the Court **DENIES** Decker's § 2241 petition and **DIRECTS** the Clerk of Court to enter judgment accordingly.

If the petitioner wishes to appeal this decision, generally he must file a notice of appeal with this Court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(B). A motion under Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than 28 days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from judgment, do not toll the deadline for an appeal.

If the petitioner files a motion for leave to appeal *in forma pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he appeals and is allowed to proceed *in forma pauperis*, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* Fed. R. App. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). It is not necessary for the petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**
**DATED:  February 27, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
